24-1729 United States v. Perryman. I see Mr. Spears is here right now. Mr. Spears, I understand you would like to reserve two minutes for rebuttal. Is that right? That's correct, your honor. Thank you. Please proceed whenever you're ready. Thank you. Brian Spears for the appellant, Laura Perryman. May it please the court. I'd like to begin by discussing the constructive amendment that occurred in this case. And there are two clear examples of how the trial presentation and the jury instructions significantly altered the criminality alleged in the indictment. First, the indictment alleged that Ms. Perryman's scheme involved deceiving doctors. That was the essence and the core of the indictment. There was this lying to doctors, this deceit of doctors. But remarkably, the district court instructed the jury that Ms. Perryman was not charged with deceiving medical providers. That's at appendix 988, that she was not charged with deceiving medical providers. The government never called any doctors to testify. And all of this changed the core of the criminality. The essence of the fraud charge was that Ms. Perryman deceived doctors. The district court charged those core allegations right out of the case. The second example is that the indictment was predicated on this notion. So why don't we just match that up? And thank you for directing us to 988. I think I see the line that you're referring to. The defendant is not charged with causing harm to patients or for deceiving medical providers. Is that? Yes, your honor. Would you just point us to where in the indictment you're saying that there is that dramatic mismatch? Yes, your honor. So paragraph one refers to the notion that the doctors were unwittingly submitting fraudulent claims. So wait a minute, say that again? Right, so paragraph one in the overview. The doctors were doing it unwittingly. I'm sorry, unwittingly, correct. Essentially that they had been deceived by Ms. Perryman and unwittingly thereby submitted fraudulent claims. Do you have to be deceived to do something unwittingly? I would submit yes. And then unwittingly just means you don't know what you're doing, right? I don't know that you have to be tricked into believing something contrary to what you're doing. Well, I think give it read as a whole the indictment. If you look at paragraph 16, it says further Lord Perryman, the defendant lied directly to doctors and directed company staff to lie to doctor. Which that's instructed doctors. Where does it say lying? First, since further Laura Perryman, the defendant lied directly to doctors. Paragraph 16, am I looking at the right place? There is a superseding indictment. I'm looking at the wrong page. Give me a page in the appendix, I'm sorry. Yep, 845, your honor, please. 845. Yeah, I'm looking at the wrong places. So, lying directly to doctors. But you have to, I'm just trying to follow. Why do you have to prove that they were deceived? Because I thought a scheme to defraud means that you create a scheme, you lie to people, maybe in an effort to get them tricked, but you don't have to succeed in tricking them, right? I mean, it's the creation and execution of the scheme. To defraud. Correct. That's a crime. I understand that, your honor. But here, where the core of the indictment is that Miss Perryman was lying to doctors to deceiving them by making them believe that the white stylet was functional. Our position is that, in fact, it was functional. But the theory of the government's case was that Miss Perryman was peddling a scheme to these doctors, which essentially was that they had to implant this white stylet, which the allegation is, had no medical function. And by implanting that, they would thereby qualify for reimbursement under CPT code 64590. So, that is the essence of the scheme. And the other essence of the scheme, which goes to the second example of constructive amendment, is, in fact, that the white stylet was non-functional. It served no medical purpose. That was, again, that's paragraph one. It's throughout the complaint, but paragraph one of the indictment specifically says that the device served no medical purpose and was inert and non-functioning. Again, a core allegation here. Now, as the trial wore on, I should back up, the government, in its opening statement, developed that theory very clearly. It argued to the jury that the white stylet was a useless piece of plastic. I'm putting that in quotes. As the trial wore on, it became clear that there were purposes served by the white stylet. And so, the claims began to morph into this notion of, well, it wasn't serving as a receiver. Well, that's what paragraph 16 says, right? Right. Falsely stating that it was a receiver. And then it had no receiver capabilities at all. So, that theory was disclosed to the defense in the indictment, right? In part, Your Honor, I do think that the essence of the charge was that the white stylet served no medical purpose. And the government opened on that. And it evolved into this notion that, well, it didn't have a receiver function. And as a result of that, the district court accommodated that evolution by then injecting this notion of misbranding. What I'm more interested in, and you've got about two minutes left in your argument, is not, I think I understand about your argument on this issue of the constructive modification of the indictment. But how does that relate to then denying the testimony, in essence, of almost every expert the defense proposed? Yes, Your Honor. Right. Well, as we've argued, it denied Ms. Perryman's right to present a defense in a fundamental way. There were multiple theories of the defense that were shut down. One of them was that the white stylet actually served medical purposes. Another one was that you didn't need the white stylet to bill under CPT code 64590. And Dr. Spinner would have testified to both of those points. Other witnesses would have as well. So that shut down the defense in a fundamental way. Similarly, there was a tranche of dock billing records that also would have established that insurance providers were providing coverage for the device before there were any stylets, white, pink, or otherwise. If we were to agree with you that the defense was precluded from, in essence, presenting these experts that went to its defense, how did that harm your client at all? How would you respond to sort of a harmless error? Right, Your Honor. Well, it deprived the defense of her ability to explain in a thorough way that the white stylet served medical purposes, that the white stylet, critically, was not necessary for CPT code 64590 to apply. That was the whole theory of the case, that the motive was this stylet was created so that this billing code would apply. And Dr. Spinner, who was more than qualified to opine on this, would have explained that you don't need a stylet to bill under that code. Other witnesses would have addressed that as well. Again, the billing records would go to that. There was another piece, too, which was Dr. Dan. There was a good faith defense presented. My client engaged Dr. Dan, who was one of the drafters of 64590, and that testimony was shut down as well. A little bit of the testimony came out, but eventually it was stricken. That was the urologist? Correct. Yes, Your Honor. I see that my time is up. Okay. We're going to see you again shortly, so go away. Thank you, Your Honor. Why don't we hear from the government now? Good morning, and may it please the Court. My name is Monica Fulch. I represent the United States in connection with this appeal, and I represented the United States in the proceedings below. Ms. Perryman's conviction and her sentence should be affirmed here. There was no constructive amendment in this case. The government's case was consistent from the indictment through the trial that Ms. Perryman invented the white stylet. The white stylet was not a receiver. It had no receiver functionality. Nevertheless, she told doctors falsely and instructed others at her company to tell doctors falsely that it was a receiver, that it had receiver functionality, and she did that in order to tell them, to instruct them that they could also bill for the implantation of the white stylet using CPT code 64590. And I understand that. So help me understand how it was not error for the Court to preclude, for example, Dr. Spinner and Dr. Eris' testimony when the Court, and I'm reading from A475 of the appendix, the Court says in ruling on Dr. Spinner, he does not opine on the facts that are at the heart of the indictment's charges, and the Court says Perryman and her company told medical providers that the white stylet was a receiver and that they could use CPT code 64590 to bill insurers for implanting it as a receiver. When the Court identifies that as the heart of the government's case, why would it preclude Dr. Spinner, who is the head, the director of pain management, who trains on the implementation of these types of devices, maybe not this particular stylet, from testifying about the proper use of 64590? I'm struggling to understand how under Rule 702, his years of experience, his practice in billing that code does not make him a sufficient expert to get through the gatekeeping function and allow that testimony. Can you explain that to me? That's right. Judge Cope found, excluded the testimony on two grounds. First, under 702 because it was unreliable, and separately under 403 because it was irrelevant. I'm not talking about the production of the stylet itself. I'm focused on the use. She's charged with upcoding, misusing a CPT code. I tried many cases as a health care fraud prosecutor. I never had a case, perhaps I wish I had now, where the Court didn't allow the defense to present a coding expert to talk about the proper use of the code. So I'm struggling to understand why that was not allowed here. Well, Dr. Spinner was, simply put, it was not a coding expert. Dr. Spinner had no experience drafting codes. You don't have to have experience drafting codes under Rule 702. Aren't doctors supposed to, doctors who use these codes and bill under the codes have a responsibility under Medicare and insurance providers to understand the codes, to keep up with the updates on the codes, and to bill adequately? Why isn't that sufficient to allow them to testify? Now, you know, the fact that he didn't draft the codes, have added on cross-examination. Why doesn't that go to wait instead of the gatekeeping function of his ability to testify? Well, here Dr. Spinner did not refer to any guidance, any information about what the codes were, how they applied in particular circumstances. He's a doctor using that code, right? Do you agree with that? Do you concede that? He's a doctor using these codes day-to-day and as a training head of the department of a major hospital in New York. Dr. Spinner bills for the implantation of PNS devices. He did not offer any information about how often he used 64590, the circumstances under which he used 64590, even though Judge Cote offered him an opportunity to supplement his report to provide any basis for actually giving the proposed opinion. Well, he says, I'm frequently called upon to provide input and advice on CPT codes, and with regard to procedures involving the STEMQ system, I would typically advise that 64590 would be applicable. That's in his report. So he says he's frequently called on to give this kind of advice, and he gives advice that 64590 is appropriate. What more would be required for him to say he has experience and expertise in the question of whether 64590 applies? The district court found that that was insufficient. That's in the revised version. I don't know that's... That was in the original as well. There was no additional information that he provided about, and in this case, the code of 64590 does have quite a lot of background, which was in the record because the question of the appropriateness of that code, where you have on the one hand an integrated receiver and separately you're implanting, making a separate incision to implant a separate receiver. That actually was the subject of guidance by the AMA as to that specific code, and it was in the record because that was an issue that Ms. Perryman had to confront when she was marketing this device. Dr. Spinner did not address any of that guidance, did not address anything other than what he said was, quote, the plain language, a plain reading of 64590. That is, he said, as a doctor who implants this device often, frequently, I look at the 64590, the plain language of that code, and I say it's okay. The district court said that in light of the issues in this case, more was required to be an expert than just a consumer of the code, essentially. Here's the issue, though. All that might have been a perfect cross-examination for the government of this expert. That seems to me goes to weight. The extent to which he has used this goes to the weight, not the court's gatekeeping function, particularly when the court did allow, for example, staff of this company who aren't doctors, who didn't draft CPT codes to testify about the coding and how the coding should be appropriately done. There were other experts the court allowed, correct? Your Honor, the court allowed one expert who did not opine on the appropriateness of the code because he had the same exact experience that Dr. Spinner had. It was just somebody who performed these and sought reimbursement under them. So was the jury required to find that the code was inappropriate? And if so, what did they base that on if nobody opined on it? What the jury was presented with, and this goes to Judge Kahn's point about the testimony of when 64590 was allowed, what the jury was presented with was testimony from StimWave employees who were trained by Ms. Perryman and others in her staff that 64590 was required when you had a separate incision when you're implanting a separate receiver. Ms. Perryman put out presentations that said it is a myth that the device has an integrated receiver. The device has a separate receiver that has to be separately implanted and it is only if you are separately implanting a receiver that you are entitled to separately bill for 64590. There are two codes at issue here. Great. Is that false though? Is that the government's theory that that's not right? I'm trying to figure out how, you're just, you're telling us that there was nobody who testified about the appropriate use of 64590. There was no expert testimony about the appropriate use of 64590. So did the jury conclude somehow that the defendant urged doctors to improperly use 64590? Is that the government's theory? The government's theory is that the defendant urged doctors to implant a non-functioning component as a receiver and bill it as a receiver. That is the government's theory because that is what the evidence showed. I think the question was and therefore, it wasn't the government's theory, and therefore the use of the code was improper. Because if you don't have the therefore, you don't have any fraud. You're right. You're right. That is correct. So I guess just following up on Judge Marion's question, the government's theory, I thought, did rest on the notion that people were tricked or whatever into using a code they ought not to have used. Because if your theory was, this is a perfectly good code for this procedure, but she tricks people into using the wrong reason to use an otherwise permissible code, then there'd be no fraud, right? That's right. The government did present evidence that 64590 required the separate implantation of a receiver. And from whom did that evidence come? Because you've just told it wasn't from your expert. It wasn't from our expert. You told us that a doctor like Spinner who has experience with training on this was not qualified to explain that. So who was qualified to tell the jury that 64590 was the wrong code? Who testified competently that that was the wrong code? There was ample documentary evidence and evidence from the witnesses themselves. Point me to something. Something that starts with an A. Or a name of a witness. How does the jury know this? Because you're telling us your expert didn't tell them. But it doesn't feel like lay testimony, or if it were, it would be weird that Spinner wasn't allowed to testify about it. I regret that I don't have cites right now, but it was Chad Andreessen testified about what the codings were, and Aaron Wilt, who was a sales representative. So he was qualified to testify about whether 64590 was the appropriate code for the white stylet. He was qualified to testify about what everybody's understanding. But who gets us to the end, therefore? Well, the language of the code, the codes were in. So the code language of the code. The language of the code, the documentary evidence about what the code meant, all of that was in the record. There was ample evidence of what the code was for the jury to make its own determination. Yes, about what the code required. That was something a lay person, a lay jury was capable of doing. That was something that a lay... And those documents came in through whom? Those documents came in through Mr. Andreessen. They came in through Ms. Wilt. They came in through Ms. Fuchs, who was the government's... I'm sorry, summary witness. Thank you. Yes. Okay. I think we've kept you up a little longer, so thank you for that. Why don't we hear from Mr. Spears again, and Mr. Spears, why don't we try to keep it to two minutes? Yes, Your Honor. Put a good focus maybe on responding to some of the issues that were vetted with the government. Yes, Your Honor, will do. So I think we can all agree that whether 64590 applied under the circumstances was fundamental to this case. It was the premise on which the government's fraud claim was based. Dr. Spinner was the most qualified witness or potential witness to opine on this, period, and he was precluded. Andreessen, cooperating witness, employee of Stimway. Wilt, sales representative employee of Stimway. This is a very specialized area. CBT coding, the use of medical devices, how they're implanted, whether they qualify for the provisions of this particular code. This is exactly what the court was concerned about in United States v. Litvak, in a highly specialized area, that particular case involved bond trading. Expert testimony is fundamental, and it was fundamental to the defense in Litvak, and it's fundamental to the defense here. And I just wanted, before I conclude, to step back a little bit further, because the preclusion of Dr. Spinner is emblematic of the way this trial went. There were many witnesses, two experts, two non-expert witnesses precluded. Dr. Dan's testimony was cut off after two minutes and generally stricken, and it really, truly compromised the defense here in a fundamental way. It can't possibly be considered to be harmless under the circumstances. If you read this record, it is striking. If there are no further questions, I'll sit down. No, thank you to both sides. Very well argued, very helpful arguments. We will take the case under advisement.